67b 169
8ap347

· 67b 169
,150a 392

BRADFORD KENNEDY vs. THE OSWEGO AND SYRACUSE RAILROAD COMPANY.

When a contract is made for the purchase and sale of a given number of cords of wood, the vendor is bound to deliver, and the vendee is entitled to receive, 128 cubic feet for each cord of wood so contracted for.

Usage has prescribed the number of feet each cord shall contain; and in the absence of an agreement or of a custom that a less number of feet shall constitute a cord, the usage applies to, and controls, the agreement.

Upon a contract for the purchase of a specified number of cords of wood which the purchaser is informed is but three feet long, he is not bound to accept of a pile of such wood eight feet long and four feet high, as a cord.

When the known length of the wood is the only circumstance that can be relied upon in support of an implied agreement to take wood, less than four feet long, upon the contract, as if it were four feet, that fact alone is not sufficient to establish such an agreement.

All the facts known to the parties at the making of the contract, or the delivery of the wood, are to be considered, in determining whether there was a contract to purchase wood, only three feet long, as if it were the proper length. They are competent to go to the jury, and from them it may infer such an agreement.

When fire wood or timber is purchased for some specific purpose, which requires it to be of a certain length, if wood of a length different from that contracted for is delivered and received, the contract is satisfied. But when the contract is for wood for being burned, and the contract does not define the length, it may be longer or shorter than four feet; but the vendor must deliver 128 cubic feet, for a cord.

In the absence of any notice that an acceptance of wood, only three feet long, would be considered an acceptance of it as if it were four feet long, the acceptance and use of it by the vendee will not estop him from insisting upon a full cord.

There was a conflict of evidence as to the making of an express agreement between the parties that, to avoid any trouble about measuring the wood, if the purchaser would take it at its length, the vendor would take four dollars per cord, for it. *Held,* that this was a question of fact for the jury and should have been submitted to them.

Where, upon the evidence, the court had the right to find that the defendant, by its agent, agreed to take, upon a contract, wood only three feet in length, as if it were four feet long, provided the plaintiff would take four dollars per cord, therefor; *held* that, the court thus finding, the defendant was bound by the act of the agent; and that there was a sufficient consideration for the agreement.

The defendant's counsel excepted to a direction to the jury to find a verdict for the plaintiff, but did not ask that any question of fact should be submitted to it. *Held,* that such a request was necessary, in order to enable him to get the benefit of the error in the direction.

It can make no difference, in principle, whether the court directs a nonsuit or orders a verdict. In either case, it is the duty of the court to submit conflicting evidence to the jury, if requested so to do. But, in the absence of a request, the court may itself pass upon the facts; and when it does so, the parties will be deemed to have acquiesced in the action of the court.

A memorandum is not received to corroborate a witness who does not recollect the facts, independent of it, but to recall the facts if he has forgotten them. Where the witness may resort to it to refresh his recollection, it may be read in evidence. But unless it becomes necessary for this purpose, it is wholly incompetent.

The defendant proved that one of its agents drew up a writing setting out the

Kennedy *v.* Oswego and Syracuse R. R. Co.

terms of an agreement for the sale and purchase of wood; that he presented it to the plaintiff's agent who made the contract, who said it was correct, but he wished the plaintiff's name in it instead of his own. It was never signed by either party. *Held,* that the paper was not evidence to show the terms of the contract.

The case of *Guy* v. *Mead* (22 *N. Y.,* 463,) distinguished.

MOTION for a new trial, on a case containing exceptions, which were ordered to be heard in the first instance at the General Term.

The plaintiff claimed to recover for 2,438 cords of wood at four dollars per cord, less $8,000 which had been paid by the defendant. The defendant denied that it had purchased or received that quantity of wood from the plaintiff, and alleged that it purchased only 2,000 cords, and that the wood delivered actually amounted to only 2,091½ cords. The defendant also alleged that the wood was not of the quality specified in the contract for its purchase, and was not piled according to the agreement. The plaintiff introduced evidence tending to show that in December, 1864, he had a quantity of wood cut and piled a short distance from the Fulton depot, on the defendant's road. That the defendant's agents examined the wood before negotiating for its purchase, and finally agreed to take it at its length and pay four dollars per cord. Dorastus Kellogg, the plaintiff's agent, testified that the agreement was made about the middle of December; that 1,600 or 1,700 cords of wood were then cut, and that some two weeks after, the agent of the defendant told him that he might deliver 2,500 cords. That the wood was drawn and piled along the railroad, near the Fulton depot, in January, February and March, 1865. That as the wood was being drawn the defendant's agents directed the teamsters when and where to pile it, and that they piled it accordingly. That on the 24th day of April, 1865, the agents of the parties met to measure the wood. That Wade, the deputy superintendent of the defendant's road, while

assisting in the measurement, objected that the wood was short, (meaning less than four feet in length,) and claimed that allowance should be made for that. To this Hitchcock, the plaintiff's agent, replied that they came there to ascertain the running measure of the piles only, and Wade answered "then very well, we will go on," that if that was what the witness wanted, it was all right. They measured the length of the piles and the height of some, and estimated the height of the rest. Some deductions were made for deficiency in height. In this way the plaintiff's agent made the wood amount to 2,439 cords. The defendant showed by Daniel Goodwin, track master, and deputy superintendent Wade, that the contract for the wood was reduced to writing and presented to Kellogg to be executed. That Kellogg read it — said it was all right — just as they had talked, only he did not wish his name to appear in it; and he told Goodwin to have it in Kennedy's name alone, and he would sign it. It was never signed. This contract was offered in evidence, and rejected.

Goodwin and Wade both testify that there was no agreement to purchase from the plaintiff more than 2,000 cords of wood ; that the wood was to be four feet in length ; and whenever five hundred cords were delivered and measured, that quantity was to be paid for within twenty days.

The defendant offered to show that notice was given by the defendant to the plaintiff on the 26th day of April, 1865, that it would employ an experienced wood measurer named Sawyer, of Syracuse, to measure the wood and ascertain the actual quantity delivered by the plaintiff ; that the plaintiff made no reply thereto ; that such measurement was made by said Sawyer before any of the wood was sawed or used by the defendant, and the amount of wood made by said Sawyer on such measurement. Objection was made by the plaintiff, the court sustained the objection, excluded the evidence,

Kennedy *v.* Oswego and Syracuse R. R. Co.

and the defendant's counsel excepted. Several other offers of evidence were made. To each and every of which the plaintiff's counsel stated, as grounds of objection, that the defendant having, by its agent, removed the wood as it was being delivered, and directed in regard to it, and having examined the wood as it was delivered, and the wood being open to its inspection, and no objection having been made by it as to its quality, either at the time of its delivery or within the twenty days within which it was to be inspected, measured and paid for, and having on the 24th of April measured the wood with plaintiff, and thereafter used it without any further measurement or delivery from the plaintiff to it, had accepted the wood and waived any defects as to its quality.

It was conceded by the plaintiff that he had received from the defendant $8,000 on account of the wood in question.

The testimony being closed, the court directed the jury to find a verdict for the plaintiff for $1,945.32, to which the defendant's counsel duly excepted.

The jury found a verdict accordingly.

*A. Perry*, for the defendant. I. The court erred in excluding the evidence offered by the defendant to show the length of the wood and the number of cords delivered by plaintiff to defendant, at the rate of 128 cubic feet to the cord. 1. This evidence was proper to show the number of cords for which the defendant was liable to pay. All agree that the wood was to be paid for at the rate of four dollars per cord. The evidence was not offered to show non-performance of the contract by the plaintiff, nor to lay the foundation for recoupment of damages by reason of the defective *quality* of the wood. The principle declared in *Reed* v. *Randall* (29 *N. Y. Rep.*, 358) and cases there cited, has no application here. The term "cord," as used by the parties in making this

agreement, signified 128 cubic feet. (*Worcester's Dic. Webster's Dic. New American Cyclopædia, vol.* 16, *pp.* 328, 335, *tit.* "*Weights and Measures.*" *Many* v. *Beekman Iron Co.,* 9 *Paige,* 188, 195.) 2. By accept-ing the wood, the defendant may have waived any defect in quality, but this certainly did not preclude in-quiry as to the quantity. 3. There was no agreement by Wade that 2,091 cords of wood should be accepted and paid for as 2,438 cords. He constantly objected to the shortness of the wood, and claimed deduction from *quantity* on account of it. Wade had no authority to make such agreement. Such agreement would be void for want of consideration. 4. This evidence was proper to show why no objection was made to receiving more than 2,000 cords. It could not be known that there was more than 2,000 cords until after a correct measurement.

II. The court erred in excluding the unexecuted mem-orandum of agreement for the purchase and sale of the wood. Every species of memorandum is now admissi-ble as evidence. (*Guy* v. *Mead,* 22 *N. Y. Rep.,* 463.)

III. The court erred in excluding evidence of the measurement of the wood by Sawyer, and notice thereof to the plaintiff. This was notice to the plaintiff that the defendant repudiated the measurement made on 24th of April, and was given before any of the wood was sawed or used.

IV. The direction by the court to the jury to find a verdict for the plaintiff for $1,945.32 was erroneous.

*J. H. Townsend,* for the plaintiff. I. The quality of the wood, for soundness and length, was open to the in-spection of the defendant, and was examined by it during its delivery, and no objection having been made thereto, during the time of its delivery, or within the time that the payment therefor was to have been made, which was a reasonable time within which the defen-

dant might examine the wood, and the measurement thereof having been made also without objection in that regard, all constitute an acceptance of the wood. The defendant might reject the wood, if not according to the contract, but not having done so, it cannot now be allowed to say that it was of inferior quality. (*Sprague* v. *Blake*, 20 *Wend.*, 61.) The principle is very clearly stated in the case of *Ely* v. *O'Leary* (2 *E. D. Smith*, 355), in the following language : The purchaser "was bound to accept them as performance of the executory contract, or reject them as soon as he discovered the alleged inferiority, and give notice of such rejection, and not having done the latter he must be deemed to have acquiesced in the quality." (*See also Warren* v. *Van Pelt*, 4 *E. D. Smith*, 202.) The case of *Reed* v. *Randall*, (29 *N. Y.*, 358,) would seem to be conclusive upon this point.

The defendant cannot say that the length of the wood did not appertain to its quality, for the agreement which it claims to have made, expressly so recognizes it. The defendant's superintendent, in stating the agreement, says the question was asked him, "What length he required it to be cut ? I told him it must be four feet long."

II. In no otherwise than by and through the measurement and delivery made on the 24th of April, has the defendant any title to the wood. It was either a trespasser in taking the wood, or it derived title thereto under that measurement; for there is no suggestion, even, that the plaintiff ever assented to any remeasurement, or made any other delivery of the wood to the defendant. The defendant cannot claim itself to have been a trespasser. Hence, having taken the wood under the measurement, it is bound by it. It does not claim that it found any error in the measurement. Had it found such error, it should have declined to receive the wood until the correction should be made, and certainly if

after the measurement it claimed a different rule, the claim was abandoned when it commenced using the wood.

III. The acceptance of the 2,436 cords, implies a promise to pay the purchase price of the 436 cords in excess of the 2,000 cords first contracted for.

IV. The unexecuted contract offered in evidence was properly rejected. 1. The paper was not perfected as an agreement. (*Mumford* v. *Whitney*, 15 *Wend.*, 380. *Robinson* v. *Cushman*, 2 *Den.*, 149.) 2. It does not purport to be an agreement between the parties. It purports to be between plaintiff and one Kellogg of the one part and one Hiram Wade, described as agent, &c., of the other part. 3. The paper was offered *as a contract*, and was objected to *as unexecuted*, as the case plainly shows. It was not offered as a part of the admission claimed to have been made by plaintiffs to defendant's agent. 4. As an admission it was worthless, for the reason that it being conceded that the plaintiff's agent declined to execute it, and the reasons of such declining being in dispute, the contents of the paper throw no light upon the admission, and especially so as the evidence is conclusive that the reason why the execution was declined was because the paper did not correctly state the agreement. At the best it was but a mere memorandum, and as such was not evidence *per se*. (2 *Phillips Ev.*, 412.) 5. But even if the paper were competent, the case would not be materially changed. We concede that the case must stand upon the facts, governed by the contract as stated by witness Wade, the deputy superintendent of the defendant's road, and it would stand with like stability governed by the agreement as stated in the writing.

*By the Court,* MULLIN, J. When a contract is made for the purchase and sale of a given number of cords of wood, the vendor is bound to deliver, and the vendee is

Kennedy *v.* Syracuse and Oswego R. R. Co.

entitled to receive, 128 cubic feet for each cord of wood so contracted for. Usage has prescribed the number of feet each cord shall contain; and in the absence of an agreement or of a custom that a less number of feet shall constitute a cord, the usage applies to and controls the agreement.

No different custom is suggested in this case; and hence the inquiry is confined to whether there was a contract between the parties by which the defendant was bound to accept less than 128 cubic feet for a cord; or whether the wood delivered was accepted in performance of the contract.

It appears by the evidence of the plaintiff's witnesses that one of the defendant's agents went into the woods while the wood in question was being cut, and saw it, and it was said in his presence that a few cords of it were too short; that while the wood was being delivered, there was no complaint that it was too short, but complaint was made on that subject when it was being measured. The defendant's agent designated the place where the wood should be piled, and he gave directions as to the size of the piles. The height of the piles was objected to, at the time of the measurement, and a deduction was made, for the deficiency in height. Wade, one of the defendant's agents, attended to the measurement, and stated to the plaintiff's agents that the quantity was 2,438 cords, and did not make any complaint as to the result, nor intimate that he wished any further measurement. After the measurement was completed, Wade claimed there should be a deduction of ten cords, and it was made. The plaintiff's book-keeper testifies that he attended the measurement, and that Wade complained that the wood was too short, and that an allowance should be made for it. The witness told him they came there to ascertain the running measurement of the piles, only, and Wade replied, "Very well, go on; if that was what I (the witness)

wanted, it was all right." It was also proved that a part of the wood was sawed by the defendant's hands, and a part of that thus sawed was used by the defendant.

Laying out of view, for the present, the evidence of an express agreement to take the wood as it was cut, as if it were four feet long, let us ascertain whether the facts above stated establish an agreement to accept the wood as if it were four feet long, or whether there was an acceptance of it in full performance of the contract, so as to preclude the defendant from now insisting that it was not as long as the contract called for.

When a contract is made for the purchase of a given number of cords of wood, which the purchaser is informed is but three feet long, he is not bound to accept of a pile of such wood eight feet long and four feet high, as a cord. He is entitled to 128 cubic feet. Such a pile gives him only ninety-six. Usage has defined the meaning of the word "cord;" and the contract must be construed in reference to it. And that meaning cannot be changed, unless the parties mutually so agree, or the contract was made in reference to some other well known custom or usage which recognizes a quantity less than 128 cubic feet as a cord. The known length of the wood is the only circumstance, aside from the alleged express agreement, that can be relied upon in support of an implied agreement to take the wood upon the contract as if it were four feet; as that was the only fact then known to the parties. All the other matters testified to by the witness occurred subsequent to the making of the contract. That fact, alone, is not enough to establish such a contract.

If the contract is to be deemed as not made until the wood was actually delivered, not having been reduced to writing, all the facts proved were, of course, then known to both parties, and they are all to be considered in determining whether there was a contract to purchase the wood as if it were the proper length. Even

Kennedy *v.* Oswego and Syracuse R. R. Co.

then, they do not conclusively establish such a contract. The facts are all of them competent to go to a jury, and from them it might infer such an agreement; but a finding against such a contract could not be set aside as against the evidence.

The next question is, do the facts proved show an acceptance of the wood delivered as a full performance of the agreement?

The respondent's counsel insist that they do; and if the defendant's agents did not intend to accept the wood as being a compliance with the terms of the contract, it was their duty to refuse to receive it, and to return what they had taken.

Had the plaintiff informed the agents of the defendant that the wood, if received by them, must be taken as if it were four feet long, and it had been then accepted, the acceptance would have been conclusive on the defendant. But no such condition was imposed, or notice given. If wood three feet long answered the purposes of the defendant as well as if it were four feet, it had no occasion to find fault with the deficiency in length, as it might be made up in the final calculation of the quantity. Or, if the wood delivered had been six feet long, it could not be claimed that it was to be estimated at four feet only. In each case the purchaser would be entitled to 128 cubic feet, and no more; and he certainly should not be obliged to take less.

The same principle is not to be applied to a contract for firewood or timber, purchased for some specific purpose, which requires it to be of a certain length. In that case, if wood of a length different from that contracted for is delivered and received, the contract is satisfied. But when the contract is for wood for being burned, and the contract does not define the length, it may be longer or shorter than four feet; but the vendor must deliver 128 cubic feet for a cord.

In the absence of any notice that an acceptance of the

wood would be considered as an acceptance of it as if it were four feet long, the acceptance and use would not estop the defendant from insisting upon a full cord. Indeed the remarks of the book-keeper were calculated to induce the defendant's agents to believe that the plaintiff would not insist that the wood should be considered, in arriving at the quantity delivered, as if it were four feet long.

I do not think the facts proved show such an acceptance as estops the defendant from alleging that the contract was not fulfilled. It was for the jury to say whether the plaintiff proved an acceptance in full performance of the contract.

I come now to the express agreement sworn to by the witness Kellogg. He says that a day or two after the conversation between him and Goodwin, about selling the wood, he (witness) told Goodwin that, to avoid any trouble about measuring it, if he would take it at its length he (the witness) would take $4 per cord for it. And it appears that the price agreed on was the sum thus indicated. It does not appear that Goodwin made any response to this proposition. But it would be fair to presume, in the absence of evidence to the contrary, that $4 was accepted by the plaintiff's agent instead of $4.50 asked, in consideration of the shortness of the wood. If this was the contract, there would be no ground for a claim for reducing the quantity because the wood was too short; and the judge might with great propriety have directed a verdict. But Goodwin denies that he ever assented to receive less than 128 cubic feet to the cord; and it was for the jury to say which of the witnesses was worthy of credit. Although Goodwin does not contradict the plaintiff's witness, as to what was said about taking it at the length it was cut, at $4 per cord, he does not deny the inference which would be drawn from it; which was that less than 128 cubic feet would be accepted as a cord.

In every aspect of the case, the questions of fact were for the jury, and should have been submitted to them.

The defendant's counsel excepted to the direction to the jury, but did not ask that any questions should be submitted to it; and the question is, whether such request was necessary, in order to enable him to get the benefit of the error in the direction to find for the plaintiff.

I think it was. In *Bidwell* v. *Lament,* (17 *How. Pr.* 357,) it was held that when a judge grants a nonsuit, in a case where there is conflicting evidence, and no request is made, to submit the questions of fact to the jury, he cannot derive any benefit from the error. And an exception to the granting of the nonsuit is not equivalent to a request to submit the facts to the jury. It can make no difference, in principle, whether the court directed a nonsuit or ordered a verdict. In either case, it is the duty of the court to submit conflicting evidence to the jury, if requested so to do. But in the absence of a request, the court may itself pass upon the facts, and the parties will be deemed to have acquiesced in the action of the court.

The appellant's counsel relies upon the exclusion of evidence offered by him to show the length of the wood and the number of cords delivered, at the rate of 128 cubic feet per cord, to reverse the judgment.

This evidence was utterly immaterial. There was no dispute but that, if the defendant was entitled to 128 cubic feet to a cord, 2,438 cords, for which the plaintiff claimed to be paid, had not been delivered. The plaintiff's whole case proceeds upon the theory that the defendant had expressly or impliedly agreed to receive, for a cord, less than 128 feet, or accepted a less quantity in satisfaction of the greater. The court must have found one or the other of these propositions; and proof that there was not of the wood 2,438 cords of 128 cubic

feet each, could not affect the finding. That was a conceded fact, in the case.

The defendant's counsel suggests that the defendant's agent had no power to agree to accept 2,091 cords of wood in satisfaction of a contract calling for 2,438. If we knew that the court found the facts to be as alleged, the conclusion of the counsel would follow. But, upon the evidence, the court had the right to find that the defendant agreed to take the wood as if four feet in length, provided the plaintiff would take $4 per cord therefor; and thus finding, the defendant was bound by the act of the agent, and there was a sufficient consideration for the agreement.

The defendant proved by the witnesses that one of the defendant's agents drew a writing setting out the terms of the agreement in relation to the wood; that he presented it to the plaintiff's agent who made the contract, who said it was correct, but he wished the plaintiff's name in it, instead of his own. It was never signed by either party. The defendant offered this writing in evidence, and it was excluded.

This paper is called by the counsel a memorandum, and he insists that it was competent evidence to show what were the terms of the contract between the parties; and he cites *Guy* v. *Mead*, (22 *N. Y.*, 463.) The paper offered in this case was made by the defendant's agent, and not by the plaintiff or his agent. In the case cited, it was made by the witness, and it was admitted because the witness swore that it was made at or about the time the transaction occurred, and that it was correct when made. He had forgotten the facts, and could only state them as, and because, they appeared in the paper. It was just as well to admit the paper as to allow the witness to read it. This paper, not being signed, was not evidence of the contract. It was made by the defendant's agents, and was to them evidence that the con-

tract was as they testified to it. But a memorandum is not received to corroborate a witness who recollects the facts, independent of it, but to recall the facts if he has forgotten them. When the witness may resort to it to refresh his recollection, it may be read in evidence. But unless it becomes necessary for this purpose, it is wholly incompetent. As well might a witness attempt to corroborate his evidence by calling a witness to testify that soon after a contract was made he, the witness, told him its terms as he swears to them on the trial. Such evidence would clearly not be competent. As to when a memorandum is competent, see *Marcly* v. *Shults*, (29 *N. Y.*, 346.)

For these reasons I think the judgment should be affirmed.

New trial denied.

[ONONDAGA GENERAL TERM, April 2, 1867. *Morgan, Bacon, Foster* and *Mullin*, Justices.]